IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-03056-PAB

GERMAN MARTINEZ VIGUERIAS,

    Petitioner,

v.

DAWN CEJA, in her official capacity as warden of the Aurora Contract Detention Facility,
KELEI B. WALKER, in her official capacity as Field Office Director, Denver, U.S. Customs & Immigration Enforcement,
ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security,
PATRICK J. LECHLEITNER, in his official capacity as Acting Director of Immigration & Customs Enforcement, and
MERRICK GARLAND, in his official capacity as Attorney General of the United States,

    Respondents.

---

## ORDER

---

This matter comes before the Court on the Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] and the Motion for a Temporary Restraining Order [Docket No. 3], filed on November 1, 2024.  Respondents filed a response to both the petition and the motion for a temporary restraining order on November 19, 2024, Docket No. 12, and petitioner replied on November 27, 2024. Docket No. 14.  The Court has jurisdiction under 28 U.S.C. § 2241(c).

I.  **BACKGROUND**[1]

Petitioner German Martinez Viguerias ("Mr. Martinez") was born in Ciudad Juárez, Mexico.  Docket No. 1 at 4–5, ¶ 14.  Around the time Mr. Martinez was eight years old, his family came to the United States to escape violence in Mexico.  *Id.* at 1–2, ¶ 1.  On January 23, 1992, Mr. Martinez was admitted to the United States as a lawful permanent resident.  Docket No. 12-1 at 3, ¶ 4.

At the age of 14, Mr. Martinez became involved with gang members.  Docket No. 1 at 6, ¶ 19.  On July 11, 2008, at the age of 32,[2] Mr. Martinez was convicted in state court in Colorado of possession of over one gram of cocaine, in violation of Colo. Rev. Stat. §§ 18-18-405(1), (2)(a)(I)(A) and was sentenced to 30 months in prison.  Docket No. 12-1 at 3, ¶ 5.  On July 12, 2010, while Mr. Martinez was serving his sentence, the Department of Homeland Security ("DHS") issued a Notice to Appear against Mr. Martinez and charged him with removability pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) for his violation of law relating to a controlled substance.  *Id.*, ¶¶ 6–7.  After an appeal to the Board of Immigration Appeals ("BIA"), an immigration judge granted Mr. Martinez's application for cancellation of his removal.  *Id.*, ¶¶ 8–12.  On April 14, 2017, Mr. Martinez was convicted under Colo. Rev. Stat. § 18-3-203(1)(b) for assault with a deadly weapon and was sentenced to 15 years in prison.  *Id.* at 4, ¶ 13.

On February 1, 2023, after completing his sentence for assault with a deadly weapon, Mr. Martinez was released from the Colorado Department of Corrections to Immigration Customs and Enforcement ("ICE") custody.  *Id.*, ¶ 15; Docket No. 1 at 6,

---

[1] The following facts, which do not appear to be disputed, are taken from petitioner's petition for a writ of habeas corpus, Docket No. 1, respondents' response, Docket No. 12, and the declaration of Jerry Rivera.  Docket No 12-1.
[2] Mr. Martinez was born in 1976.  Docket No. 1 at 4, ¶ 14.

2

¶ 21.  Mr. Martinez filed a request to be released on bond, but, at a February 23, 2023 hearing before an immigration judge, Mr. Martinez withdrew his request.  Docket No. 1 at 9, ¶ 31; Docket No. 12-1 at 4, ¶ 19.

On February 27, 2023, while being held in custody by ICE, Mr. Martinez filed a motion with the immigration judge requesting voluntary departure.  Docket No. 12-1 at 5, ¶ 20.  On March 7, 2023, Mr. Martinez appeared pro se before the immigration judge.  *Id.*, ¶ 21; Docket No. 1 at 10, ¶ 32.  At the hearing, the immigration judge determined that Mr. Martinez was ineligible for voluntary departure due to his conviction for an aggravated felony, Docket No. 12-1 at 5, ¶ 21, and found him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  Docket No. 1 at 10, ¶ 32.

Mr. Martinez subsequently obtained pro bono counsel.  *Id.*, ¶ 33.  On March 27, 2023, Mr. Martinez filed a motion to reopen his immigration case based on incompetence due to mental health conditions.  *Id.*  Mr. Martinez also filed an application requesting protection under the Convention Against Torture ("CAT") because of his former gang affiliation.  *Id.*  On April 10, 2023, the immigration judge granted Mr. Martinez's motion to reopen his case.  *Id.*, ¶ 34.  On May 11, 2023, the immigration judge found that Mr. Martinez was unable to represent himself because he lacked a factual and rational understanding of the proceedings.  *Id.*, ¶ 35.  On September 1, 2023, the immigration judge issued a decision granting Mr. Martinez's request for protection under CAT and deferring Mr. Martinez's removal.  Docket No. 12-1 at 6–7, ¶ 36; Docket No. 1 at 10–11, ¶ 36.

On September 15, 2023, DHS appealed the immigration judge's decision to the BIA.  Docket No. 1 at 11, ¶ 37.  On January 8, 2024, the BIA vacated the immigration

3

judge's grant of deferred removal under CAT and remanded the case for further proceedings. *Id.*, ¶ 38; Docket No. 12-1 at 7, ¶ 40. The case was remanded to a different immigration judge and, on May 10, 2024, the new immigration judge denied Mr. Martinez's CAT application. Docket No. 1 at 11, ¶ 39; Docket No. 12-1 at 7, ¶ 43. On June 6, 2024, Mr. Martinez appealed the immigration judge's decision. Docket No. 1 at 11, ¶ 39. On October 29, 2024, the BIA remanded the case for the immigration judge to make additional factual findings regarding Mr. Martinez's CAT application. *Id.*, ¶ 40; Docket No. 12-1 at 8, ¶ 48. At the hearing, the parties represented that Mr. Martinez's immigration case was remanded to an immigration judge different from either the immigration judge who denied Mr. Martinez's CAT application or the immigration judge who granted his CAT application.

During the pendency of Mr. Martinez's immigration proceedings, he has been housed at the Aurora Contract Detention Facility ("Aurora Detention Facility") in Aurora, Colorado. Docket No. 1 at 2, ¶ 2. Mr. Martinez has been in custody at the Aurora Detention Facility for over 21 months. *Id.*, ¶ 3. On November 1, 2024, Mr. Martinez filed a petition for a writ of habeas corpus ("habeas petition"), Docket No. 1, and a motion for a temporary restraining order ("TRO motion"). Docket No. 3. His habeas petition asks the Court to (1) assume jurisdiction over this matter; (2) enjoin the respondents from transferring Mr. Martinez outside the jurisdiction of the District of Colorado while habeas proceedings are pending; (3) declare that Mr. Martinez's detention without the possibility of a bond hearing violates the Due Process Clause of the Fifth Amendment; (4) declare that Mr. Martinez's continued detention lacks a reasonable relationship to any legitimate government purpose and is excessive and

punitive in nature; (5) issue a writ of habeas corpus directing respondents to release Mr. Martinez on his own recognizance or order that Mr. Martinez be provided a bond hearing within seven days or order respondents to place Mr. Martinez in a community-based alternative to detention; and (6) award reasonable costs and attorneys' fees. Docket No. 1 at 27–28.  Mr. Martinez's TRO motion asks the Court to order respondents to provide him with a constitutionally adequate bond hearing within seven days and to enjoin respondents from removing Mr. Martinez from the jurisdiction of the Court during the pendency of Mr. Martinez's habeas proceedings.  Docket No. 3 at 2.  On November 4, 2024, the parties jointly moved to set a consolidated briefing schedule wherein respondents would file a response to Mr. Martinez's motions by November 19, 2024, and Mr. Martinez would file a reply by November 29, 2024.  Docket No. 6 at 1.  The Court granted the motion and set a briefing schedule.  Docket No. 9.  On December 6, 2024, the Court held a hearing on Mr. Martinez's motion for a temporary restraining order.  Docket No. 15.  At the hearing, the parties represented that Mr. Martinez is set for a third merits hearing regarding his CAT application on January 16, 2025.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are met: (1) the applicant is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  *Id.*; *Maleng v. Cook,* 490 U.S. 488, 490 (1989).  The Court has subject matter jurisdiction under § 2241 because Mr. Martinez is in the custody of immigration officials

in Aurora, Colorado and he asserts that his detention without a bond hearing violates the Fifth Amendment of the Constitution. Docket No. 1 at 2, 4, ¶¶ 2, 11.

"[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Rumsfeld v. Padilla,* 542 U.S. 426, 443 (2004); *see also United States v. Scott,* 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined."). Venue is proper because Mr. Martinez is in custody in Aurora, Colorado, which is within the geographical boundaries of the District of Colorado.

Ordinarily, petitioners must exhaust their administrative remedies before seeking a writ under § 2241. *See Williams v. O'Brien,* 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). Respondents have not pursued the argument that Mr. Martinez's claims are barred because he failed to exhaust his administrative remedies. Moreover, exhaustion of remedies is not required if exhaustion would be futile. *Goodwin v. State of Okla.,* 923 F.2d 156, 157 (10th Cir. 1991).

Mr. Martinez is detained under 8 U.S.C. § 1226(c), which permits the government to detain certain individuals who are not citizens of the United States without a bond hearing during removal proceedings. 8 U.S.C. § 1226(c). Mr. Martinez seeks an individualized hearing and bond determination on the basis that his detention without a bond hearing is so prolonged that it has become unconstitutional. Docket No. 1 at 2, ¶ 3. Immigration officials have previously ruled that they lack authority to hear constitutional challenges to statutes. *Matter of R-A-V-P, Respondent*, 27 I. & N. Dec. 803, 804 n.2 (BIA 2020), *abrogated on other grounds by Hernandez-Lara v. Lyons,* 10

F.4th 19 (1st Cir. 2021). Accordingly, the Court finds that any appeal by Mr. Martinez would have been futile, and the Court has jurisdiction to consider his habeas petition.

## III. ANALYSIS

### A. Detention Under § 1226(c)

Mr. Martinez is being held in custody pursuant to 8 U.S.C. § 1226(c).[3] Docket No. 1 at 14, ¶ 46; Docket No. 12 at 1–2. Section 1226(c) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 in an effort to prevent deportable aliens convicted of certain crimes from engaging in further criminal activity or failing to appear for removal hearings. *Nielsen v. Preap*, 586 U.S. 392, 398 (2019). The section is "a special rule for aliens who have committed certain dangerous crimes and those who have connections to terrorism," mandating that such individuals "must be arrested 'when [they are] released' from custody on criminal charges and (with one narrow exception [ ]) must be detained without a bond hearing until the question of their removal is resolved." *Id.* at 396 (quoting 8 U.S.C. § 1226(c)). The Supreme Court has held that it is constitutional to detain individuals pursuant to § 1226(c) without a bond hearing during removal proceedings. *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Jennings v. Rodriguez*, 583 U.S. 281, 303–04 (2018).

In *Jennings*, the Supreme Court considered a Ninth Circuit decision holding that due process required that individuals detained pursuant to § 1226(c) be given a bond hearing every six months and that detention lasting longer than six months is impermissible unless the government proves that further detention is justified by clear

---

[3] Respondents clarify that, while Mr. Martinez is presently being held pursuant to 8 U.S.C. § 1226(c), because an immigration judge has twice found that he is removable, he has also been held in custody pursuant to the post removal statute, 8 U.S.C. § 1231(a). Docket No. 12 at 9.

and convincing evidence.  *Jennings*, 583 U.S. at 291.  The Supreme Court held that § 1226(c), on its face, does not require bond hearings every six months, but the Court did not address the question of whether prolonged detention without a bond hearing violates the due process clause.  *Id.* at 305–06, 311–12.

Several federal appellate courts have concluded that, at some point, prolonged detention under § 1226(c) without a bond hearing violates the Due Process Clause of the Fifth Amendment.  *See, e.g., German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 209 (3rd Cir. 2020) (holding that individuals detained under § 1226(c) may bring as-applied challenges to their detention based on its duration); *Reid v. Donelan,* 17 F. 4th 1, 7 (1st Cir. 2021) ("we adhere to the notion that the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under § 1226(c) (citation and quotations omitted)); *Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024) ("we conclude that due process entitled Black and G.M. to individualized bond hearings by an [immigration judge] once their detentions became unreasonably prolonged.").  The Eighth Circuit recently declined to follow such precedent, holding that no bond hearing is required because "the government can detain an alien for as long as deportation proceedings are still 'pending.'"  *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (quoting *Demore*, 538 U.S. at 527).  The Tenth Circuit has yet to rule on this issue.

### B. Procedural Due Process Analysis

Mr. Martinez claims that his detention without a bond hearing has become unconstitutionally prolonged and violates his procedural due process rights.  Docket No. 1 at 14, ¶ 47.  To determine whether to grant the relief that Mr. Martinez requests and to order respondents to hold a bond hearing, the Court will analyze six factors to

determine whether his detention violates the Due Process Clause: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.[4]  *See Daley*, 2023 WL 2336052, at *2–3 (collecting cases).

Mr. Martinez does not dispute that he is removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) due to having been convicted of an aggravated felony or that he is statutorily ineligible for a bond hearing because of the conviction.  Docket No. 1 at 10, 14–15, ¶¶ 32–33, 48.  Under *Demore*, respondents are not required to hold a bond hearing during removal proceedings.  538 U.S. at 531.  Mr. Martinez nevertheless argues that his detention violates the Due Process Clause because he has been held for over twenty-one months without a bond hearing.  Docket No. 1 at 2, ¶ 3.  The Court agrees that the duration of his detention – over twenty-one months – implicates the Due Process Clause.  *See Reid*, 17 F. 4th at 4 (considering a fourteen-month detention); *Daley*, 2023 WL 2336052, at *3 (finding that detention for over fourteen months

---

[4] In *Banyee*, the Eighth Circuit concluded that the holding in *Demore* is clear and "leave[s] no room for a multi-factor 'reasonableness' test."  115 F.4th at 933.  However, in this district and among other courts of appeal, the weight of authority endorses the approach the Court applies here.  *See de Zarate v. Choate*, No. 23-cv-00571-PAB, 2023 WL 2574370, at *3 (D. Colo. Mar. 20, 2023); *Daley v. Choate*, No. 22-cv-03043-RM, 2023 WL 2336052, at *3 (D. Colo. Jan. 6, 2023); *Viruel Arias v. Choate*, No. 22-cv-02238-CNS, 2022 WL 4467245, at *2 (D. Colo. Sept. 26, 2022); *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019); *German Santos*, 965 F.3d at 11 (applying a four-factor balancing test that considered duration of detention, likelihood of continued detention, reasons for delay, and conditions of confinement to determine whether to order respondents to hold a bond hearing).

implicated the Due Process Clause); *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018) (same); *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (same).

### 1. Total Length of Detention to Date

Mr. Martinez was first detained at the Aurora Detention Facility on February 1, 2023. Docket No 1 at 2, ¶ 2. At the time Mr. Martinez filed his habeas petition, he had been detained for 640 days or twenty-one months. *Id.* Courts have held that the length of detention factor weighs in favor of petitioners who have been detained for shorter periods of time than Mr. Martinez. *See Daley*, 2023 WL 2336052, at *3 (finding detention for 430 days weighed in favor of petitioner); *Perez v. Decker*, 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) (finding that a detention for more than nine months weighed in favor of petitioner); *Muse*, 409 F. Supp. 3d at 716 (finding that detention for over fourteen months weighed in favor of petitioner); *Portillo*, 322 F. Supp. 3d at 707 (same). Accordingly, the Court finds that the total length of detention to date weighs in Mr. Martinez's favor.

### 2. Likely Duration of Future Detention

Mr. Martinez argues that his continued detention has "no end in sight." Docket 1 at 2, ¶ 2. He argues that the BIA's remand for the immigration judge to engage in additional fact finding could add months to his confinement. *Id.* at 11, ¶ 40. He also claims that either party could appeal the decision of the immigration judge to the BIA and then the Tenth Circuit Court of Appeals, noting that both parties have already appealed to the BIA at least once. *Id.* Respondents argue that Mr. Martinez's future detention is not indefinite because his detention under § 1226(c) has a definite termination point at the end of his immigration proceedings. Docket No. 12 at 12.

10

While Mr. Martinez's immigration proceedings will end at some point, the proceedings so far demonstrate that the end is unlikely to arrive soon, given that one of the parties will likely appeal the immigration judge's determination. Delay in these circumstances weighs in favor of petitioners engaged in or soon to be engaged in appeals processes. *See Viruel Arias*, 2022 WL 4467245, at *2 ("where either party may appeal an immigration court's decision this factor weighs in favor of the petitioner"); *see also German Santos*, 965 F.3d at 212 (finding that an appeals process that "would add months more in prison" weighed in favor of petitioner when considering the likelihood of his continued detention). Accordingly, this factor weighs in Mr. Martinez's favor.

### 3. *Conditions of Detention*

Mr. Martinez argues that the conditions of his detention at the Aurora Detention Facility weigh in his favor. Docket No. 1 at 12–14, 16, ¶¶ 41–45, 55. Respondents do not dispute this conclusion. *See* Docket No. 12 at 12–13. Instead, they claim that, if Mr. Martinez is seeking to challenge the conditions of his confinement, his proper course is to file a civil rights lawsuit. *Id.* However, Mr. Martinez does not challenge the conditions of his confinement; he argues that he is entitled to a bond hearing under the Due Process Clause, in part, because his civil detention is akin to criminal detention. In analyzing the third factor, "courts consider whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" because "[t]he more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Villaescusa-Rios v. Choate*, No. 20-cv-03187-CMA, 2021 WL 269766, at *4 (D. Colo. Jan. 27, 2021) (citations and quotations omitted). Mr. Martinez's allegations regarding his confinement at the Aurora Detention Facility, which respondents do not contest,

11

demonstrate that he is being held in conditions resembling penal confinement. Accordingly, the Court finds that this factor weighs in Mr. Martinez's favor.

### 4. and 5.  Delays in the Removal Proceedings Caused by the Detainee and the Government

Mr. Martinez's detention was lengthened by his choice to reopen his removal proceedings and then by his choice to appeal the denial of his CAT application.  Docket No. 12 at 13.  His detention was further lengthened by the many continuances and extensions he requested.  *Id.* (arguing that 121 days of Mr. Martinez's confinement are attributable to continuances he has received).  However, the Court will not hold Mr. Martinez's efforts to seek relief through the available legal channels against him.  *See German Santos*, 965 F.3d at 212 ("we will not hold [petitioner's] appeals and applications for discretionary relief against him" (citing *Chavez-Alvarez v. Warden York County Prison*, 783 F. 3d 469, 476–77 (3rd Cir. 2005)).

Mr. Martinez argues that any delay in his immigration case is entirely attributable to respondents.  Docket No. 1 at 17, ¶ 57.  He claims that respondents necessitated the reopening of Mr. Martinez's case by not initially conducting a competency hearing.  *Id.* He further argues that, but for respondents' appeal of the immigration judge's initial grant of his CAT application, Mr. Martinez would no longer be in custody.  *Id.*  At the hearing on December 6, 2024, Mr. Martinez clarified that he does not allege that the delay he attributes to respondents was the result of bad faith.  *See German Santos*, 965 F.3d at 212 ("[a]bsent carelessness or bad faith, we will not scrutinize the merits of immigration proceedings and blame whichever party has the weaker hand").  The Court does not find that the delay caused by Mr. Martinez appearing pro se during his initial immigration proceedings was of such a duration as to weigh in Mr. Martinez's favor.

Rather, Mr. Martinez was placed in custody on February 1, 2023, he was found removable on March 7, 2023, he retained counsel on March 27, 2023, and his case was reopened on April 11, 2023. Docket No. 12-1 at 4–6, ¶¶ 14–28. The two-month delay that occurred because Mr. Martinez proceeded pro se was not a significant cause of the delay in the immigration proceedings. *See Chairez-Castrejon v. Bible*, 188 F. Supp. 3d 1221, 1228 (D. Utah 2016) ("But even if these delays are considered in their entirety – a period of approximately four months – they cannot credibly be considered as the determining factor leading to the prolonged length of Mr. Chairez's detention. A four-month delay pales in comparison to the seventeen-month-period it took to resolve Mr. Chairez's first round of appeals." (citation and quotation omitted)). Moreover, for the same reasons discussed above, the Court will not hold the fact that respondents appealed against respondents in considering any delay in the immigration proceedings given that Mr. Martinez does not argue that the appeal was made in bad faith or as a dilatory tactic. *See German Santos*, 965 F.3d at 212. Accordingly, the Court finds that the fourth and fifth factors are neutral.

### 6. The Likelihood that the Removal Proceedings Will Result in a Final Order of Removal

Mr. Martinez argues that the sixth factor weighs in his favor because he "has a strong chance of ultimately receiving deferral of removal under the CAT." Docket No. 1 at 17–18, ¶ 58. Mr. Martinez highlights that an immigration judge has already found that he qualifies for deferred removal and approved his CAT application. *Id.* He claims it is "unlikely that his immigration case will end in an order of removal that renders him deportable." *Id.*

Respondents point out that the more recent determination by an immigration judge is that Mr. Martinez does not qualify for CAT protection. Docket No. 12 at 13–14. They claim that Mr. Martinez has not shown why he believes he has a "strong chance" of success in light of this more recent determination. *Id.* Moreover, while respondents acknowledge that the BIA remanded the most recent determination by an immigration judge for additional fact-finding to support its conclusions, respondents argue that there is no indication that such fact-finding will alter the immigration judge's ultimate conclusion that Mr. Martinez does not qualify for CAT protection. *Id.* at 14.

The BIA has remanded decisions granting and denying Mr. Martinez's CAT application. Docket No. 12-1 at 7–8, ¶¶ 40, 48. Most recently, the BIA remanded the proceedings for the immigration judge to engage in additional fact-finding. *Id.* at 8, ¶ 48. Neither party addresses why the BIA found additional fact-finding was required or what the additional facts are likely to be on remand. As such, the Court finds that the sixth factor is neutral; neither party has shown that Mr. Martinez's immigration proceedings are likely to end in that party's favor.

Factors one, two, and three weigh in favor of Mr. Martinez; factors four, five, and six are neutral. When considered together, the factors favor Mr. Martinez. Accordingly, the Court finds that Mr. Martinez's detention for over twenty-one months without a bond hearing violates his due process rights under the Fifth Amendment.

### C. Bond Hearing

Mr. Martinez argues that many courts have determined that "the government must bear the burden by clear and convincing evidence" at a bond hearing when there is a due process violation stemming from prolonged detention. Docket No 1 at 23, ¶ 72 (quoting *Pedro O. v. Garland*, 543 F. Supp. 3d 733, 742 (D. Minn. 2021)); *but see de*

*Zarate*, 2023 WL 2574370, at *5 ("Ms. Andrade will bear the burden of proof that she is not a flight risk or a danger to the community"); *Basari v. Barr*, 469 F. Supp. 3d 1063, 1074 (D. Colo. 2020) (regarding detention pursuant to § 1226(a), "the Fifth Amendment clearly does not require the government to bear the burden of proof in bond proceedings"). Mr. Martinez cites no binding precedent stating that the government must bear the burden at his bond hearing, and, as the Court has explained, "[d]ue process is not a one size fits all proposition." *de Zarate*, 2023 WL 2574370, at *5 (quoting *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022)). The Supreme Court has ruled that Congress may make rules in the immigration context that would be "unacceptable if applied to citizens" because of Congress's broad authority over the immigration and naturalization process. *Demore,* 538 U.S. at 521 (quotation and citation omitted). Although the Supreme Court has contemplated that placing the burden of proof on a petitioner who is not a citizen of the U.S. may pose a constitutional problem where that person is facing potentially indefinite and permanent detention, *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001), it has noted that detention during removal proceedings under § 1226(c) has a definite end point. *Demore*, 538 U.S. at 527–28; *see also Miranda*, 34 F.4th at 360–61.

Furthermore, the Supreme Court in *Demore* held that it is constitutionally permissible for the government to detain individuals under § 1226(c) without a bond hearing. *Demore,* 538 U.S. at 531. Even Justice Kennedy's concurrence in *Demore*, in which he concluded that due process required individualized bond hearings, does not suggest that the burden of proof at a bond hearing should be placed on the government. *Id.* at 532 ("the permissibility of continued detention pending deportation proceedings

15

turns solely on the alien's ability to satisfy the ordinary bond procedures"). Accordingly, the Court will not place the burden of proof on the government at Mr. Martinez's bond hearing. Rather Mr. Martinez will bear the burden of proof that he is not a flight risk or a danger to the community.

### D. Substantive Due Process

In addition to violating his procedural due process rights, Mr. Martinez argues that his prolonged detention violates his substantive due process rights because his civil confinement has "become excessively prolonged, and therefore punitive." Docket No. 1 at 18, ¶ 61 (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)). Mr. Martinez asserts that "[t]he length of [his] confinement, its unrelatedness to the Immigration and Nationality Act's statutory purpose, and the negative impact imprisonment has on [his] health, constitute an objectively unreasonable harm that rises to the level of punishment." *Id.*, ¶ 60. He claims that he is therefore entitled to immediate release. *Id.* at 22, ¶ 69.

Mr. Martinez contends that "[t]he government's objectives in detaining Mr. Martinez are not reasonable because they could be equally met by less punitive alternatives and are not connected to a constitutionally permitted purpose: to avoid flight or dangerousness." *Id.* at 18, ¶ 60. However, in *Demore*, the Supreme Court reached the opposite conclusion. In that case, the Court upheld the constitutionality of detention under § 1226(c) against a substantive due process challenge. *See Demore*, 538 U.S. at 515. The Court recognized "detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523. The Court found that § 1226(c) has the legitimate purpose of preventing deportable aliens convicted of certain crimes from engaging in further criminal activity or failing to appear for removal

hearings. *Nielsen*, 586 U.S. at 398 (citing *Demore*, 538 U.S. at 513). The Court also found that "[t]he evidence Congress had before it certainly supports the approach it selected." *Demore*, 538 U.S. at 528. Moreover, the Court held that "the Due Process Clause does not require [the government] to employ the least burdensome means to accomplish its goal." *Id.* Therefore, the Court rejected both Mr. Martinez's arguments that respondents must use less punitive alternatives and that his detention is unrelated to a legitimate purpose.[5]

Furthermore, although Mr. Martinez suggests that the conditions of his confinement are hurting his mental health, Docket No. 1 at 18, ¶ 60, Mr. Martinez's petition is premised on the length of his detention, not the conditions of his confinement.[6]

Finally, nothing in *Demore* suggests that Mr. Martinez's twenty-one-month detention violates his substantive due process rights and requires his immediate release. *See Demore*, 538 U.S. at 518–30. The Court stated that, in most cases,

---

[5] Mr. Martinez provides no support for the proposition that he is being held pursuant to a different purpose and he does not explain why prolonged detention makes it any more likely that he will appear at his immigration proceedings or any less likely that he will engage in criminal activity. Mr. Martinez asserts that he presents a low risk of engaging in further criminal activity because he has ended his gang affiliation and has embraced Christianity. Docket No. 1 at 6–7, 19–20, ¶¶ 22, 64. He also asserts that he is not a flight risk because he has family in the United States and because he is seeking not to be removed to Mexico. *Id.* at 19–20, ¶ 64. While these facts may be relevant considerations at a bond hearing, they do not show that respondents' purposes in keeping Mr. Martinez in custody are less legitimate after twenty-one months.

[6] To the extent Mr. Martinez's cursory reference to his mental health does raise the issue of the conditions of his confinement, the Court finds that Mr. Martinez has made no effort to show that the conditions of his confinement are unconstitutional. *See* Docket No. 1; *see also United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

detention under § 1226(c) lasts less than ninety days.  *Id.* at 529.  However, the Court recognized that detention could extend to several months,[7] "in the minority of cases in which the alien chooses to appeal."  *Id.* at 530.  In discussing the delay imposed by appeals, the Court cautioned that "[c]ourt ordered release cannot help but encourage dilatory and obstructive tactics by aliens," and stated that "the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow."  *Id.* at 530 n.14.  Nothing in the opinion of the Court suggests that, in circumstances like those presented here, which is part of an even smaller number of cases with multiple rounds of appeal, the length of detention could undermine the Court's holding that § 1226(c) does not violate a detainee's substantive due process rights.

Justice Kennedy's concurrence suggests that "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."  *Id.* at 532–33.  Here, however, while appeals to the BIA have delayed Mr. Martinez's deportation, Mr. Martinez provides no support for the proposition that his incarceration is for any reason other than the legitimate goals of facilitating deportation and protecting against the risk of flight or dangerousness.  Instead, he opposes only the length of his detention.  Moreover, Justice Kennedy's concurrence states that, under such circumstances, due process may require an individualized bond hearing.  *Id.* at 532.  Given that the Court has granted Mr. Martinez's request for a bond hearing,

---

[7] The Court found that the average period of extended detention necessitated by an appeal to the BIA was five months.  *See Demore*, 538 U.S. at 530.

nothing in the concurrence suggests that Mr. Martinez is entitled to the further relief of immediate release.

Mr. Martinez relies on *Doe v. Becerra*, 2024 WL 2340779, at *5 (N.D. Cal. May 2, 2024), for the proposition that the length of his detention violates his substantive due process rights. Docket No. 1 at 19–20, ¶¶ 63–64. In that case, a federal district court in the Northern District of California found that a detainee's confinement for 30 months under § 1226(c) violated his substantive due process rights. *Becerra*, 2024 WL 2340779, at *5. However, the district court, relying exclusively on Ninth Circuit precedent, found that the petitioner's confinement was punitive because the conditions of his federal civil confinement were worse than the conditions of the state criminal confinement from which he had been released. *See id.* at *13 ("Mr. Doe's detention is punitive if the conditions at GSA are harsher than those he faced in state prison, which were by definition intended to punish."). The court ordered the government to immediately release the detainee from custody or "propose an injunction that would modify the conditions of Mr. Doe's detention to rectify the due process violations and ensure that the conditions are not harsher than Mr. Doe's state incarceration." *Id.* at *14. Here, although Mr. Martinez states that "the conditions of detention within the Aurora facility are akin to a penal institution," Docket No. 1 at 20, ¶ 64, he does not argue that these conditions violate his constitutional rights or that they are a basis for his release from custody.

Because the Supreme Court in *Demore* determined that confinement under § 1226(c) does not violate substantive due process and because Mr. Martinez has not shown that the holding in *Demore* is inapplicable where the detainee has been in

19

custody for a prolonged period due to the resolution of multiple appeals to the BIA, the Court finds that Mr. Martinez has not shown that his detention for twenty-one months violates his substantive due process rights. Therefore the Court will deny Mr. Martinez's request for immediate release.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that respondents shall hold an individualized bond hearing before an impartial immigration judge within ten days to determine whether petitioner German Martinez Viguerias should be released on conditions. It is further

**ORDERED** that, pursuant to D.C.COLO.LCivR 7.1(d), which requires that motions be filed as separate documents, and D.C.COLO.LCivR 54.3, which requires that a motion for attorney fees be supported by an affidavit, Mr. Martinez's request for attorney fees is **DENIED** without prejudice. It is further

**ORDERED** that the Motion for a Temporary Restraining Order [Docket No. 3] is **DENIED as moot**. It is further

**ORDERED** that the case is closed.

DATED December 19, 2024.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge